# EXHIBIT  1

(Page 5 of 60)

Copy

**Financial Title-San Bernardino**

Recording Requested By:
RESMAE MORTGAGE CORPORATION

Return To:

RESMAE MORTGAGE CORPORATION
6 Pointe Drive
Brea, CALIFORNIA 92821
Attn. Final Documents

Prepared By:
Greg Martinez  6 Pointe
Drive, Brea, CALIFORNIA
92821

DOC # 2006-0548009
07/27/2006 08:00A Fee:66.00
Page 1 of 20
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|----|-------|-----|-------|
|   |   |   |      |      |    |      |       |     |       |
| A | R | L |      |      |    | COPY | LONG | REFUND | NCHG | EXAM |

[Space Above This Line For Recording Data]

Apn:
144-160-023-7
TRA: 059-005

# DEED OF TRUST

MIN

T
YS

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated July 18, 2006
together with all Riders to this document.
**(B) "Borrower"** is JOSE LUIS JIMENEZ, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY

610                     D2 001 001

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is RESMAE MORTGAGE CORPORATION

Lender is a Corporation
organized and existing under the laws of DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005 1/01

-6A(CA) (0005).01
Page 1 of 15          Initials: J.L.J.
VMP MORTGAGE FORMS - (800)521-7291

(Page 6 of 60)

Copy

Lender's address is 6 POINTE DRIVE BREA, CALIFORNIA 92821

(D) "Trustee" is FINANCIAL TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated July 18, 2006
The Note states that Borrower owes Lender **Five Hundred Thirty Nine Thousand Two
Hundred and 00/100**                                                      Dollars
(U.S. $        539,200.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than August 01, 2036        .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.



-6A(CA) (0005).01                    Page 2 of 15                Initials J.L.J              Form 3005  1/01

Copy

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | RIVERSIDE | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

Attached hereto and made a part hereof as "Exhibit A "

Parcel ID Number: 144-160-023-7                                    which currently has the address of
7371 PINEWOOD COURT                                                                    [Street]
( CORONA AREA)                                             [City], California 92880      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

 -6A(CA) (0005).01                    Page 3 of 15              Initials: J.LJ              Form 3005  1/01

Copy

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be



 Initials: J.L.J

-6A(CA) (0005).01                    Page 4 of 18                    Form 3005  1/01

Copy

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

    Page 5 of 15    Initials     Form 3005  1/01

-6A(CA) (0005).01

(Page 10 of 60)

Copy

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with




Copy

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



-6A(CA) (0005).01                    Page 7 of 15            Initials             Form 3005  1/01

Copy

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

 

Copy

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



Copy

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

 

-6A(CA) (0005) 01                         Page 10 of 15                    Initials: J. C. J                    Form 3005  1/01

Copy

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall  continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



-6A(CA) (0005).01                          Page 11 of 15                Initials: J.L.J        Form 3005  1/01

Copy

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 -6A(CA) (0005).01

Page 12 of 15

Initials 

Form 3005    1/01

Copy

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



-6A(CA) (0005).01                    Page 13 of 15                    Initials: J.L.J                    Form 3005  1/01

(Page 18 of 60)

Copy

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____            _____ (Seal)
JOSE LUIS JIMENEZ                                                                    -Borrower

_____            _____ (Seal)
                                                                                                   -Borrower

_____ (Seal)   _____ (Seal)
                                      -Borrower                                        -Borrower

_____ (Seal)   _____ (Seal)
                                      -Borrower                                        -Borrower

_____ (Seal)   _____ (Seal)
                                      -Borrower                                        -Borrower

-6A(CA) (0005).01                          Page 14 of 15                          Form 3005   1/01

(Page 19 of 60)

Copy

State of California
County of Los Angeles } ss.

On 7/18/06 before me, Lily Larios A Notary Public
personally appeared

JOSE LUIS JIMENEZ

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Lily Lari_ (Seal)



LILY LARIOS
Commission # 1386695
Notary Public - California
Los Angeles County
My Comm. Expires Nov 23, 2006



LILY LARIOS
Commission # 1386695
Notary Public - California
Los Angeles County
My Comm. Expires Nov 23, 2006



-6A(CA) (0005).01                    Page 15 of 15        Initials J.L.J        Form 3005  1/01

Copy



(Page 21 of 60)

Copy

PENALTY OF PERJURY FOR NOTARY SEAL

(GOVERNMENT CODE 27361.7)

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE
DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

NAME OF NOTARY: *Lily Larios*

DATE COMMISSION EXPIRES: *November 23, 2006*

COUNTY WHERE BOND IS FILED (if applicable) *Los Angeles*

STATE WHERE BOND IS FILED: *California*

COMMISSION NO.: *1386696*

PLACE OF EXECUTION: COUNTY OF *Los Angeles*, CALIFORNIA

DATE: *7/26/06*

SIGNATURE *Lucille Pena*    FINANCIAL TITLE COMPANY

TYPE OR PRINT NAME: LUCILLE PENA

Copy

Order Number: 00270576-SN1

## EXHIBIT 'A'



All that certain real property situated in the County of **Riverside**,
State of California, described as follows:

LOT 23, OF TRACT NO. 28387-1, IN THE COUNTY OF RIVERSIDE,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 286,
PAGE(S) 82 THROUGH 86, INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER
HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500
FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN
INSTRUMENTS OF RECORD.

APN: 144-160-023-7

ExhibitA 10/31/01

Copy

[Space Above This Line For Recording Data]

MIN: ████████████    Loan Number: ████████

# INTEREST ONLY ADJUSTABLE RATE RIDER

### (Six-Month LIBOR Index (As Published In *The Wall Street Journal*))
### Rate Caps - 5 Year Interest Only Period

THIS INTEREST ONLY ADJUSTABLE RATE RIDER is made this **18th** day of **July, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Interest Only Adjustable Rate Note (the "Note") to **RESMAE MORTGAGE CORPORATION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**7371 PINEWOOD COURT, (CORONA AREA), CALIFORNIA 92880**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM INTEREST RATE I MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **7.080%** . The Note provides for interest only payments until the first fully amortizing principal and interest payment due date (the "First P&I Payment Due Date"), which is the first day of **September, 2011** .

The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **August, 2008** , and may change on that day every 6th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

Initials: J. L.J

MULTISTATE INTEREST ONLY ADJUSTABLE RATE RIDER (LIBOR Index)    Page 1 of 3    ResMAE (R00222)

Copy

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six** percentage points ( **6.000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.080** % or less than **7.080** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point ( **1.000%** ) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.080** % or less than **7.080** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on the Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 5th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**11. UNIFORM SECURED NOTE**

The Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under the Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as the Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under the Note. Some of those conditions read as follows:

Initials: J.L.J

Copy

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this options shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
JOSE LUIS JIMENEZ                 -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                      -Borrower

# EXHIBIT  2

# INTEREST ONLY ADJUSTABLE RATE NOTE

(Six-Month LIBOR Index (As Published In *The Wall Street Journal*))
Rate Caps - 5 Year Interest Only Period

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| July 18, 2006 | SAN BERNARDINO | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

**7371 PINEWOOD COURT, (CORONA AREA), CALIFORNIA 92880**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan I have received, I promise to pay U.S. $ 539,200.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

**RESMAE MORTGAGE CORPORATION**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.080%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on September 01, 2006. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on August 01, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at RESMAE MORTGAGE CORPORATION
P.O. Box 729, Brea, CA 92822

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 3,181.28 until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note, until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of August, 2008 and may change on that day every 6th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

---

MULTISTATE Interest Only ADJUSTABLE RAT

ResMAE (R00221)

610    N    001    001    Initials: J.L.J

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          **8.080**          % or less than     **7.080**     %.  Thereafter, my adjustable interest rate will never be increased or  decreased  on  any  single  Change Date by more than          **One**          percentage points (  **1.000%**   ) from the rate of interest I have been paying  for the preceding 6  months.   My interest rate will never be greater than    **13.080**  % or less than     **7.080**    %.

**(E) Effective Date of Changes**

My  new  interest  rate  will  become  effective  on  each  Change  Date.   I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

Before  the  effective  date  of  any  change  in  my  interest  rate  and/or  monthly payment, the Note Holder will deliver or mail to me a notice of such change.  The notice will include information required by law to be given to me and  also  the  title  and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on the Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 5th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.

If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within     **Twenty-Four (24)**     months from the date of execution of the Security Instrument I make a full or partial Prepayment, and  the  total of such Prepayments in any 12-month period exceeds TWENTY PERCENT (20%) of the original Principal  amount  of  the  loan,  I  will  pay  a  Prepayment  charge  in an amount equal to SIX (6) months advance interest on the amount by which the total of my Prepayments within that 12-month period  exceeds TWENTY  PERCENT (20%) of the original Principal amount of the loan.

**6.    LOAN CHARGES**

If a law, which applies to  this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected  from  me  that  exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal  I owe under this Note or by making a direct payment to me.  If  a  refund  reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of      **15**      calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   **5.000**      % of my  overdue payment of interest, during the period when my payment is interest only, and  of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)Notice of Default**

If I am  in  default, the Note Holder  may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest  that  I  owe  on that  amount.   That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If  the  Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE Interest Only ADJUSTABLE RATE NOTE - WSJ Six-Month LIBOR INDEX
1001994521
ResMAE (R00221)                                    Page 2 of 3                                    Initials: _J. L. J._

(Page 3 of 4?)

Copy



**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this options shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  (Seal)          _____  (Seal)
JOSE LUIS JIMENEZ                        -Borrower                                                        -Borrower

_____  (Seal)          _____  (Seal)
                                                     -Borrower                                                        -Borrower

_____  (Seal)          _____  (Seal)
                                                     -Borrower                                                        -Borrower

_____  (Seal)          _____  (Seal)
                                                     -Borrower                                                        -Borrower

**U.S. Bank National Association, as Successor Trustee to Bank of America, National Association, as successor by merger to LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-RM4**

Pay to the order of _____ **
without recourse                                                                    [Sign Original Only]

**ResMAE Mortgage Corporation**

Signed _____

Name: Marjorie Jorgensen

Title: Collateral Control Manager

# EXHIBIT 3

DOC # 2009-0360085
07/13/2009 08:00A Fee:27.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

INSTRUMENT PREPARED BY AND
WHEN RECORDED MAIL TO:
Wilshire Credit Corporation
P.O. Box 8517
Portland, OR 97207

Loan:
Min #:
APN / Tax ID:

| S | | | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | T: | CTY | UNI | 025 |

**orporate Assignment of Mortgage/Deed of Trust**

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

**U.S. Bank National Association, as Successor Trustee to Bank of America, National Association, as successor by merger to LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-RM4**

with an address of **180 East Fifth Street, St. Paul, MN  55101**

All beneficial interest under that certain Mortgage/Deed of Trust dated **07/18/2006** and executed by **Jose Luis Jimenez**, the lender being **RESMAE MORTGAGE CORPORATION**, in the original amount of $539,200.00 and the Trustee being FINANCIAL TITLE COMPANY

Recorded on 07/27/2006 in book ___ at page___ as Instrument No. **2006-0548009** of Official Records in the County Recorder's office of **RIVERSIDE**, State of **California.**

Property Address: 7371 PINEWOOD CT, CORONA, CA  928809253

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under this Mortgage/Deed of Trust.

T
025

**"MERS" is Mortgage Electronic Registration Systems, Inc. as Nominee for RESMAE MORTGAGE CORPORATION**

Name: Justin Rauh
Title: Assistant Secretary

Date: 03/19/09

Loan: 
Min #

**STATE OF OR**
**COUNTY OF Washington**

On **4/14/2009** before me, **Joseph James Dini**, Notary Public, Personally appeared **Justin Rauh**, who is the **Assistant Secretary** of **"MERS" is Mortgage Electronic Registration Systems, Inc. as Nominee for RESMAE MORTGAGE CORPORATION ,,** Personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_____
Joseph James Dini, Notary Public

OFFICIAL SEAL
JOSEPH JAMES DINI
NOTARY PUBLIC - OREGON
COMMISSION NO. A409754
MY COMMISSION EXPIRES SEPT. 7, 2010

Exp. Sept. 7, 2010



**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this options shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JOSE LUIS JIMENEZ                    -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                       -Borrower

**\*\*U.S. Bank National Association, as Successor Trustee to Bank of America, National Association, as successor by merger to LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-RM4**

Pay to the order of     \*\*
_____
without recourse                                      *[Sign Original Only]*

**ResMAE Mortgage Corporation**

Signed: _____

Name:   Marjorie Jorgensen
Title:     Collateral Control Manager

1001994521
ResMAE (R00221)                         Page 3 of 3

Recording Requested By:
**Bank of America, N.A.**
Prepared By: **Rachelle Narro**

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#
Property Address:
**7371 Pinewood Ct**
**Corona, CA 92880-9253**
CA0-ADT  25886910    7/15/2013  NS0630B

DOC # 2013-0400007
08/15/2013 12:47P Fee:28.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|----|------|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
|   |   |   |     |     |   | T: |   | CTY | UNI | 001 |

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **NATIONSTAR MORTGAGE, LLC** whose address is **350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:     **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR RESMAE MORTGAGE CORPORATION**

Original Borrower(s):     **JOSE LUIS JIMENEZ, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**

Original Trustee:     **FINANCIAL TITLE COMPANY**

Date of Deed of Trust:     **7/18/2006**

Original Loan Amount:     **$539,200.00**

Recorded in Riverside County, CA on: **7/27/2006**, book **N/A**, page **N/A** and instrument number **2006-0548009**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**JUL 23 2013**

Bank of America, N.A.

By: _____
Rostam Khodavandi
Assistant Vice President

State of California
County of Los Angeles

On __JUL 2 3 2013__ before me, _____ **Sophie Neary Pok** _____, Notary Public, personally appeared
_____ Rostam Khodavandi _____

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____ **Sophie Neary Pok** _____    (Seal)
My Commission Expires: __July 30, 2015__



SOPHIE NEARY POK
Commission # 1946008
Notary Public - California
Orange County
My Comm. Expires Jul 30, 2015

DocID#

Recording Requested By:
**Bank of America**
Prepared By: **Joseph Luis Rosario**
**4909 Savarese Circle**
**Tampa, FL 33634**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**P.O. Box 961006**
**Ft Worth, TX 76161-9836**

DocID#

Property Address:
**7371 Pinewood Ct**
**Corona, CA 92880-9253**
CA0-ADT-BANS34382505    1/7/2016  NSCORBUS5



**2016-0021270**
01/20/2016 03:29 PM Fee: $ 28.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

914

This space for Recorder's use

## CORRECTIVE ASSIGNMENT OF DEED OF TRUST

\*\* This Corrective Assignment of Deed of Trust is being recorded for the purposes set forth below.  An Assignment of Deed of Trust executed by **Bank of America, N.A.**, as assignor, in favor of **NATIONSTAR MORTGAGE, LLC**, as assignee, dated **7/15/2013** and recorded on **8/15/2013**  [as Instrument **#2013-0400007** in] / [in Book #N/A, page #N/A of] the official records in the County Recorder's office of **Riverside County, CA** (the "Prior Assignment") was inadvertently recorded by **Bank of America, N.A.**, the then-servicer of the loan secured by the deed of trust referenced in the Prior Assignment and described below (the "Deed of Trust").  **NATIONSTAR MORTGAGE, LLC** has executed this Corrective Assignment of Deed of Trust (i) to ensure that the beneficiary of record immediately prior to the recordation of the Prior Assignment is re-established as the current beneficiary of record, and (ii) to transfer to such prior beneficiary of record all of its right, title and interest, if any, as beneficiary under the Deed of Trust.

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **4909 SAVARESE CIRCLE, TAMPA, FL 33634** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK NATIONAL ASSOCIATION AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK, N.A. AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-RM4** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Beneficiary: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR RESMAE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS** |
| Original Borrower(s): | **JOSE LUIS JIMENEZ, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** |
| Original Trustee: | **FINANCIAL TITLE COMPANY** |
| Date of Deed of Trust: | **7/18/2006** |
| Original Loan Amount: | **$539,200.00** |

Recorded in **Riverside County, CA** on: **7/27/2006**, book N/A, page N/A and instrument number **2006-0548009**

**Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said deed of trust.**

IN WITNESS WHEREOF, the undersigned has caused this Corrective Assignment of Deed of Trust to be executed on
**JAN 0 8 2016**

**BANK OF AMERICA AS ATTORNEY IN FACT FOR NATIONSTAR MORTGAGE, LLC BY POWER OF ATTORNEY RECORDED ON DOCUMENT NUMBER 2015-0333132**

By: _Regina L McKay_

**Regina L. McKay, Assistant Vice President**

State of **FL**, County of **Hillsborough**

The foregoing instrument was acknowledged before me this JAN 0 8 2016 , by **Regina L. McKay, Assistant Vice President** authorized to sign on behalf of **BANK OF AMERICA AS ATTORNEY IN FACT FOR NATIONSTAR MORTGAGE, LLC BY POWER OF ATTORNEY RECORDED ON DOCUMENT NUMBER 2015-0333132.** He/she is personally known to me or has produced _____ as identification.

Notary Public: _____

My Commission Expires: _____ 3/5/2017

Cheri L. Harper

CHERI L HARPER
Notary Public, State of Florida
Commission# EE 881040
My comm. expires Mar. 5, 2017

---

DocID# ███████████

# EXHIBIT  4

Fill in this information to identify your case and this filing:

Debtor 1 __Jose Roberto Benitez-Gomez__
First Name   Middle Name   Last Name

Debtor 2 _____
(Spouse, if filing) First Name   Middle Name   Last Name

United States Bankruptcy Court for the: __Central__ District of __CA__
(State)

Case number __2:17-bk-20956-WB__

☒ Check if this is an
amended filing

**FILED**

**OCT 04 2017**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

**1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
☒ Yes. Where is the property?

**1.1.** __9532 Arkansas Street__
Street address, if available, or other description

__Bellflower__   __CA__   __90706__
City   State   ZIP Code

__Los Angeles County__
County

**What is the property?** Check all that apply.
☒ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: __7110-019-015__

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property? | Current value of the portion you own?
$ __170,000.00__ | $ __5,100.00__

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

FEE SIMPLE 3% INTEREST

☐ Check if this is community property (see instructions)

If you own or have more than one, list here:

**1.2.** __7371 Pinewood Court__
Street address, if available, or other description

__Corona__   __CA__   __92880__
City   State   ZIP Code

__Riverside County__
County

**What is the property?** Check all that apply.
☒ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: __144-160-023-7__

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property? | Current value of the portion you own?
$ __550,000.00__ | $ __11,000.00__

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

FEE SIMPLE 2% INTEREST

☐ Check if this is community property (see instructions)

Official Form 106A/B   Schedule A/B: Property   page 1

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor 1    **Jose Roberto Benitez-Gomez**
　　　　　First Name　　Middle Name　　　　Last Name

Case number *(if known)* 2:17-bk-20956-WB

---

1.3. **1736 Calle Ciervos**
　　Street address, if available, or other description

**What is the property?** Check all that apply.
- ☒ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other _____

**San Dimas** 　　**CA** 　　**91773**
City　　　　State　　ZIP Code

**Los Angeles County**
County

**Who has an interest in the property?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☒ At least one of the debtors and another

*Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? 　$ **765,000.00**
Current value of the portion you own? 　$ **7,650.00**

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

FEE SIMPLE 1% INTEREST

☐ **Check if this is community property** (see instructions)

**Other information you wish to add about this item, such as local property identification number:** 8395-031-021

---

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here ...................................................➔ 　$ **23,750.00**

---

## Part 2: Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**
- ☒ No
- ☒ Yes

3.1. Make: 　　**Ford**
Model: 　　**Expedition**
Year: 　　**2004**
Approximate mileage: **151000**
Other information:

**Who has an interest in the property?** Check one.
- ☒ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this is community property** (see instructions)

*Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? 　$ **6,500.00**
Current value of the portion you own? 　$ **6,500.00**

If you own or have more than one, describe here:

3.2. Make: 　_____
Model: 　_____
Year: 　_____
Approximate mileage: _____
Other information:

**Who has an interest in the property?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this is community property** (see instructions)

*Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? 　$ _____
Current value of the portion you own? 　$ _____

---

Official Form 106A/B

Schedule A/B: Property

page 2

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor 1    **Jose Roberto Benitez-Gomez**
　　First Name　　　Middle Name　　　　Last Name

Case number (if known)  2:17-bk-20956-WB

---

3.3. Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

[ _____ ]

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? | Current value of the portion you own?

$ _____    $ _____

3.4. Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

[ _____ ]

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? | Current value of the portion you own?

$ _____    $ _____

---

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☒ No
☐ Yes

4.1. Make: _____

Model: _____

Year: _____

Other information:

[ _____ ]

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? | Current value of the portion you own?

$ _____    $ _____

If you own or have more than one, list here:

4.1. Make: _____

Model: _____

Year: _____

Other information:

[ _____ ]

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? | Current value of the portion you own?

$ _____    $ _____

---

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ................................................➔

$ 6,500.00

---

Official Form 106A/B

Schedule A/B: Property

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor 1    **Jose Roberto Benitez-Gomez**
First Name    Middle Name    Last Name    Case number *(if known)* 2:17-bk-20956-WB

| Part 3: | Describe Your Personal and Household Items |
|---|---|

**Do you own or have any legal or equitable interest in any of the following items?** — Current value of the portion you own? Do not deduct secured claims or exemptions.

**6. Household goods and furnishings**

*Examples: Major appliances, furniture, linens, china, kitchenware*

☐ No
☒ Yes. Describe....... — $ 13,000.00

**7. Electronics**

*Examples: Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games*

☐ No
☒ Yes. Describe.       Television Sets — $ 1,500.00

**8. Collectibles of value**

*Examples: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles*

☒ No
☐ Yes. Describe....... — $

**9. Equipment for sports and hobbies**

*Examples: Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments*

☒ No
☐ Yes. Describe....... — $

**10. Firearms**

*Examples: Pistols, rifles, shotguns, ammunition, and related equipment*

☒ No
☐ Yes. Describe....... — $

**11. Clothes**

*Examples: Everyday clothes, furs, leather coats, designer wear, shoes, accessories*

☐ No
☒ Yes. Describe.......     Clothing and Shouse — $ 2,500.00

**12. Jewelry**

*Examples: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver*

☒ No
☐ Yes. Describe....... — $

**13. Non-farm animals**

*Examples: Dogs, cats, birds, horses*

☒ No
☐ Yes. Describe....... — $

**14. Any other personal and household items you did not already list, including any health aids you did not list**

☒ No
☐ Yes. Give specific information ........... — $

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** .................................................................➔ $ 17,000.00

Official Form 106A/B    Schedule A/B: Property    page 4

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor 1   **Jose Roberto Benitez-Gomez**
First Name     Middle Name     Last Name

Case number (if known) 2:17-bk-20956-WB

| Part 4: | Describe Your Financial Assets |
|---|---|

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☒ Yes ......................................................................................................... Cash: _____ $ ___1,600.00___

**17. Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☒ Yes ...................

Institution name:

| 17.1. Checking account: | Savings Wells Fargo | $ ___800.00___ |
| 17.2. Checking account: | Checking Wells | $ ___1,400.00___ |
| 17.3. Savings account: | | $ _____ |
| 17.4. Savings account: | | $ _____ |
| 17.5. Certificates of deposit: | | $ _____ |
| 17.6. Other financial account: | | $ _____ |
| 17.7. Other financial account: | | $ _____ |
| 17.8. Other financial account: | | $ _____ |
| 17.9. Other financial account: | | $ _____ |

**18. Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☒ No
☐ Yes ...............

Institution or issuer name:

_____ $ _____
_____ $ _____
_____ $ _____

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☒ No
☐ Yes. Give specific information about them. ...................

Name of entity:                              % of ownership:

_____ ___% $ _____
_____ ___% $ _____
_____ ___% $ _____

Official Form 106A/B                     Schedule A/B: Property                                    page 5

Debtor 1    Jose Roberto Benitez-Gomez
    First Name      Middle Name       Last Name

Case number (if known)  2:17-bk-20956-WB

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☒ No
☐ Yes. Give specific   Issuer name:
    information about
    them...................    _____    $ _____
    _____    $ _____
    _____    $ _____

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☒ No
☐ Yes. List each   Type of account:   Institution name:
    account separately..

    401(k) or similar plan: _____    $ _____

    Pension plan: _____    $ _____

    IRA: _____    $ _____

    Retirement account: _____    $ _____

    Keogh: _____    $ _____

    Additional account: _____    $ _____

    Additional account: _____    $ _____

**22 Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications
companies, or others

☒ No
☐ Yes .....................
    Institution  name or individual:

    Electric: _____

    Gas: _____    $ _____

    Heating oil: _____    $ _____

    Security deposit on rental unit: _____    $ _____

    Prepaid rent: _____    $ _____

    Telephone: _____    $ _____

    Water: _____    $ _____

    Rented furniture: _____    $ _____

    Other: _____    $ _____

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☒ No
☐ Yes.....................   Issuer name and description:
    _____    $ _____
    _____    $ _____
    _____    $ _____

Official Form 106A/B          **Schedule A/B: Property**

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor 1    Jose Roberto Benitez-Gomez
　　　　　First Name　　Middle Name　　Last Name

Case number (if known) 2:17-bk-20956-WB

---

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☒ No

☐ Yes ............................. Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

| | $ |
| | $ |
| | $ |

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☒ No

☐ Yes. Give specific
information about them. . | | $ |

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☒ No

☐ Yes. Give specific
information about them. . | | $ |

27. **Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☒ No

☐ Yes. Give specific
information about them. . | | $ |

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**

☒ No

☐ Yes. Give specific information
about them, including whether
you already filed the returns
and the tax years.................

Federal: $ _____
State: $ _____
Local: $ _____

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☒ No

☐ Yes. Give specific information. ..........

Alimony: $ _____
Maintenance: $ _____
Support: $ _____
Divorce settlement: $ _____
Property settlement: $ _____

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation,
Social Security benefits; unpaid loans you made to someone else

☒ No

☐ Yes. Give specific information. ..........

$ _____

---

Official Form 106A/B                    Schedule A/B: Property                    page 7

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor 1    **Jose Roberto Benitez-Gomez**
First Name    Middle Name    Last Name

Case number (if known) 2:17-bk-20956-WB

---

**31. Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

   ☒ No
   ☐ Yes. Name the insurance company
      of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| _____ | _____ | $ _____ |
| _____ | _____ | $ _____ |
| _____ | _____ | $ _____ |

**32. Any interest in property that is due you from someone who has died**

   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

   ☒ No
   ☐ Yes. Give specific information. ..........  [                    ]    $ _____

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

   ☒ No
   ☐ Yes. Describe each claim.................  [                    ]    $ _____

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

   ☒ No
   ☐ Yes. Describe each claim. .................  [                    ]    $ _____

**35. Any financial assets you did not already list**

   ☒ No
   ☐ Yes. Give specific information. .........  [                    ]    $ _____

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** ...............................................................→    $    1,200.00

---

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**
   ☐ No. Go to Part 6.
   ☒ Yes. Go to line 38.

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**
   ☒ No
   ☐ Yes. Describe....  [                    ]    $ _____

**39. Office equipment, furnishings, and supplies**
   *Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
   ☐ No
   ☒ Yes. Describe.....  [                    ]    $ _____

Official Form 106A/B                    Schedule A/B: Property                    page 8

American LegalNet, Inc.
www.FormsWorkFlow.com

Debtor 1   Jose Roberto Benitez-Gomez
     First Name    Middle Name    Last Name

Case number *(if known)*  2:17-bk-20956-WB

**40.** **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**
☒ No
☐ Yes. Describe.....    $ _____

**40.** **Inventory**
☒ No
☐ Yes. Describe.....    $ _____

**42** **Interests in partnerships or joint ventures**
☐ No
☒ Yes. Describe.......    Name of entity:          % of ownership:

Auto Repair Mobil Services    100   %   $     6000

    _____ %   $ _____
    _____ %   $ _____

**43.** **Customer lists, mailing lists, or other compilations**
☒ No
☐ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?
    ☒ No
    ☐ Yes. Describe ......    $ _____

**44.** **Any business-related property you did not already list**
☒ No
☐ Yes. Give specific
    information..........    $ _____
    $ _____
    $ _____
    $ _____
    $ _____

**45.** Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
for Part 5. Write that number here ...................................................................→ $     6,000.00

**Part 6:**    **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

**46.** **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
☒ No. Go to Part 7.
☐ Yes. Go to line 47.

Current value of the
portion you own?
Do not deduct secured claims
or exemptions.

**47.** **Farm animals**
*Examples:* Livestock, poultry, farm-raised fish
☒ No
☐ Yes ..................    $ _____

Official Form 106A/B    Schedule A/B: Property    page 9

Debtor 1    **Jose Roberto Benitez-Gomez**
First Name    Middle Name    Last Name

Case number (if known)  2:17-bk-20956-WB

**48.** Crops—either growing or harvested

☒ No

☐ Yes. Give specific
information .........

$ _____

**49.** Farm and fishing equipment, implements, machinery, fixtures, and tools of trade

☒ No

☐ Yes....................

$ _____

**50.** Farm and fishing supplies, chemicals, and feed

☒ No

☐ Yes....................

$ _____

**51.** Any farm- and commercial fishing-related property you did not already list

☒ No

☐ Yes. Give specific
information .........

$ _____

**52.** Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached
for Part 6. Write that number here ....................................................................................... →

$       0.00

## Part 7:    Describe All Property You Own or Have an Interest in That You Did Not List Above

**53.** Do you have other property of any kind you did not already list?
*Examples:* Season tickets, country club membership

☒ No

☐ Yes. Give specific
information .........

$ _____

$ _____

$ _____

**54** Add the dollar value of all of your entries from Part 7. Write that number here ....................... →

$       0.00

## Part 8:    List the Totals of Each Part of this Form

**55.** Part 1: Total real estate, line 2 ..................................................................................... →

$    23,750.00

**56.** Part 2: Total vehicles, line 5

$    6,500.00

**57.** Part 3: Total personal and household items, line 15

$   17,000.00

**58.** Part 4: Total financial assets, line 36

$    2,200.00

**59.** Part 5: Total business-related property, line 45

$    6,000.00

**60.** Part 6: Total farm- and fishing-related property, line 52

$       0.00

**61.** Part7: Total other property not listed, line 54

+ $       0.00

**62.** Total personal property. Add lines 56 through 61 ................

$   31,700.00

Copy personal property total  →  + $   31,700.00

**63.** Total of all property on Schedule A/B. Add line 55 + line 62 ..............................................................

$   55,450.00

Official Form 106A/B

Schedule A/B: Property

page 10

American LegalNet, Inc.
www.FormsWorkFlow.com

# EXHIBIT  5

*COPY of Document Recorded*
*Riverside, CA County Recorder*
2017-0089692 *BK: PG:*
03/03/2017    *has not been compared with*
*original. Original will be returned when*
*process has been completed.*

*Fee: 34.00 DTT: 0.00*
*Total: 34.00*

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO**

Title365

**AZTEC FORECLOSURE CORPORATION**
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

---

Space above this line for recorder's use only

APN # 144-160-023-7
Property Address: 7371 Pinewood Court, Corona, CA 92880
Trustee Sale No. 17-004848CXE   Title Order No. 730-1701723-70

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**

**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**

**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU
NÀY**

PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE
IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES
PROVIDED TO THE TRUSTOR

## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good
standing by paying all of your past due payments plus permitted costs and expenses
within the time permitted by law for reinstatement of your account, which is normally five
business days prior to the date set for the sale of your property.  No sale date may be set
until approximately 90 days from the date this notice of default may be recorded (which
date of recordation appears on this notice).

The amount is **$31,727.72** as of 03/01/17 and will increase until your account becomes
current.

T.S. #:  17-004848CXE
ORDER #:  730-1701723-70
Notice of Default - Aztec

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of the property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

> U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM4 c/o Nationstar Mortgage LLC
> C/O Aztec Foreclosure Corporation, 3636 N. Central Ave., Suite #400, Phoenix, AZ 85012, (602) 638-5700 or (877) 257-0717.

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION

T.S. #: 17-004848CXE
ORDER #: 730-1701723-70
Notice of Default - Aztec

NOTICE IS HEREBY GIVEN THAT: Aztec Foreclosure Corporation is the duly appointed
Substituted Trustee, or acting as agent for the beneficiary or trustee under a Deed of
Trust dated 07/18/06, executed by Jose Luis Jimenez, a married man as his sole and
separate property, as trustor(s), to secure obligations in favor of Mortgage Electronic
Registration Systems, Inc., solely as Nominee for RESMAE Mortgage Corporation, a
Delaware Corporation, as Beneficiary recorded on July 27, 2006 in Instrument No. 2006-
0548009 of official records in the Office of the Recorder of RIVERSIDE County, California,
as more fully described on said Deed of Trust.

Including the Note(s) for the sum of $539,200.00 that the beneficial interest under said
Deed of Trust and the obligations secured thereby are presently held by the beneficiary;
that a breach of, and default in, the obligations for which said Deed of Trust is security
has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND/OR INTEREST WHICH BECAME DUE 07/01/16
AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND/OR INTEREST, TOGETHER
WITH LATE CHARGES, IMPOUNDS, INSURANCE PREMIUMS AND/OR OTHER
ADVANCES, TAXES, DELINQUENT PAYMENTS ON SENIOR LIENS, ASSESSMENTS,
ATTORNEY'S FEES AND/OR TRUSTEE'S FEES, IF ANY, AND COURT RELATED COSTS
ARISING FROM THE BENEFICIARY'S PROTECTION OF ITS SECURITY, AND ANY OTHER
FEES AND COSTS PERMITTED UNDER THE DEED OF TRUST, PROMISSORY NOTE, AND
RELATED DOCUMENTS AND ALL OF WHICH MUST BE CURED AS A CONDITION OF
REINSTATEMENT.

That by reason thereof, the present Beneficiary under such Deed of Trust has deposited
with Aztec Foreclosure Corporation, a true and correct copy of such Deed of Trust and
all documents evidencing the obligations secured thereby, and has declared and does
hereby declare all sums secured thereby immediately due and payable and has elected
and does hereby elect to cause the trust property to be sold to satisfy the obligations
secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5 or
2923.55 is attached to this notice.

DATE: _____3/1/17_____

AZTEC FORECLOSURE CORPORATION
As Trustee or acting as Agent for the beneficiary


Amy Connolly
Assistant Secretary / Assistant Vice President

(Page 1 of 1)

**Copy**

## Declaration of Mortgage Servicer Pursuant to
## Civil Code §2923.55(c)

Borrower(s):          Jose L. Jimenez
Mortgage Servicer:    Nationstar Mortgage LLC
Property Address:     7371 Pinewood Ct, Corona CA  92880
T.S. No.:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. X The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code §2923.55(f), but has not made contact despite such due diligence. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

   ☐ An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, beneficiary, or authorized agent.

   ☐ An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

   ☐ An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

4. ☐ The requirements of California Civil Code §2923.55 do not apply because the loan encumbering the above-referenced property is not secured by a first lien mortgage or first lien deed of trust that secures a loan, or that encumbers real property, described in California Civil Code §2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Nationstar Mortgage LLC
Mortgage Servicer

Dated: 2/8/2017          By: _____  2/8/17

Name (Print): Jennifer Talbot-Document

*COPY of Document Recorded*
**Riverside, CA** County Recorder
**2017-0375398** *BK:   PG:*
*09/11/2017   has not been compared with original. Original will be returned when process has been completed.*

*Fee: 28.00 DTT: 0.00*
*Total: 28.00*

WHEN RECORDED MAIL TO:
Title365
Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

Trustee Sale No. 17-004848 CXE
730-1701723-70
APN 144-160-023-7

Space above this line for recorder's use only

# NOTICE OF TRUSTEE'S SALE

<u>*ATTENTION RECORDER:*</u> THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY – PURSUANT TO CIVIL CODE SECTION 2923.3(a)

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 07/18/06.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On <u>**10/04/17**</u> at <u>**9:00 am**</u>, **Aztec Foreclosure Corporation** as the duly appointed Trustee under and pursuant to the power of sale contained in that certain Deed of Trust executed by **Jose Luis Jimenez, a married man as his sole and separate property**, as Trustor(s), in favor of Mortgage Electronic Registration Systems, Inc., solely as Nominee for RESMAE Mortgage Corporation, a Delaware Corporation, as Beneficiary, <u>**Recorded on 07/27/06**</u> **in Instrument No. 2006-0548009** of official records in the Office of the county recorder of <u>RIVERSIDE</u> County, California; **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH** (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state), **In front of the Corona Civic Center, 849 W. Sixth Street, Corona, CA 92882**, all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California described as:

**7371 PINEWOOD COURT, CORONA, CA 92880**

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$594,626.87**  (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

Notice of Trustee's Sale
T.S. #:  17-004848 CXE
ORDER #:    730-1701723-70

The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

DATE: _____ 9/7/17 _____

AZTEC FORECLOSURE CORPORATION

*Amy Connolly*

Amy Connolly
Assistant Secretary / Assistant Vice President
Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012
Phone: (877) 257-0717 or (602) 638-5700
Fax:  (602) 638-5748
www.aztectrustee.com

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call or visit the Internet Web site, using the file number assigned to this case 17-004848.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

| www.homesearch.com<br>800-758-8052 | Or | Aztec Foreclosure Corporation<br>(877) 257-0717<br>www.aztectrustee.com |
|---|---|---|

# EXHIBIT 6

October 3, 2017

# NOTICE OF BANKRUPTCY CASE FILING

RE: Trustee Sale No. $17-004848$ CXE

Trustee Sale Date October 4, 2017 at 9:00 a.m.

Attention:
AZTEC FORECLOSURE CORP.
ATT: BANKRUPTCY DEPARTMENT
3636 N. CENTRAL AVE. SUITE 400
PHOENIX, AZ 85012
PHONE:    (800) 731-0850 OR (602) 222-5711
FAX:      (847) 627-8803

NOTICE IS HEREBY GIVEN that JOSE ROBERTO BENITEZ-GOMEZ
is an equitable owner of Two Percent (2%) interest since
May 16, 2017 of the real property commonly referred as:

7371 PINEWOOD COURT
CORONA, CA, 92880
APN:144-160-023-7

YOU ARE HEREBY FURTHER PUT ON NOTICE that I had filed
for a Voluntary Bankruptcy Petition on:
**September 7, 2017, Case # 2:17-bk-20956-WB,,**
in the Central District of California; all actions against
this mention property are STAYED, by the automatic stay as
provided by 11 USC 362(a), until the Bankruptcy matter is
dismissed or until the Bankruptcy Court (after the Motion
and Hearing) relives the Beneficiary from the stay.
The stay is effective automatically upon the filing of a
bankruptcy, whether voluntary, joint or involuntary;
actions taken in violation of the stay will be void.

Consequentially, I demand that such trustee sale to be
cancelled

*Jose Roberto Benitez-Gomez*

¶ **362.02**              **COLLIER ON BANKRUPTCY**              **362-12**

From the stay and, in conjunction with Rule 4001, provides a procedure for seeking such relief. Finally, section 362 provides an explicit damage remedy for an individual injured by violation of the stay. In addition, even in cases not involving individuals, a court may punish stay violations through its contempt power.

## ¶ 362.02.    **Effective Date of Stay and Notice**

The stay is effective automatically upon the filing of a bankruptcy petition, whether voluntary, joint or involuntary.    1 Formal service of process is not required and no particular notice need to be given in order to subject a party to the stay.    2 In general, actions taken in violation of the stay will be void, or at least voidable, even where there was no actual notice of the existence of the stay.    3 Violation of the stay is punishable as contempt of court. Particularly if the violation is willful, the court may punish the violator for contempt and take other appropriate steps to negate the impact of the improper action. In addition, if the debtor is an individual, a court may award damages under section 362(h) for violations of the stay.

4 A party that has received notice of the bankruptcy case, even if only oral notice, can be sanctioned for violation of the stay. If there are donbts about the veracity

---

1    The stay does not arise automatically in cases ancillary to a foreign proceeding file under 11U.S.C. Section 304. In addition, conversion of a case from chapter 11 to chapter 7 does not trigger a new automatic stay. *In re* State Airlines, Inc., 873 F.2d 264 (11th Cir. 1989).
2  Se Job v. Calder (*In re* Calder), 907 F.2d 953 (10th Cir. 1990); Smith v. First Am. Bank, N.A (*In re* Smith), 876 F.2d 524 (6th Cir. 1989). C.F. Mneller v. Nugenr.  184 U.S. 1.22S. Ct. 269,46 L. Ed. 405(1991); Fidelity Mortgage Inv. v. Camelia Builders, Inc., 550 F2d 47 (2d Cir. 1976). *Cert. denied,* 429 U.S. 1093, 97 s. Ct. 1107, 51 L. Ed 540 (1977).
3  Courts have disagreed about whether actions taken in violation of the stay are void or voidable. Compare *In re* Soares, 107 F.3d 969 (1st Cir. 1997): *In re* Schwartz, 954 F. 2d 569.26 C.B.C. 2d 649 (9th Cir. 1992) (void) *and* Easley v. Pettibone Michigan Corp., 990 F.2d 905. 28 C.B. C. 2d 1002 (6th Cir.) 1993). This issue is discussed at ¶ 362.11[1] *infra*. Where, however, the liability of The third party arises only upon nonpayment by the debtor and the automatic stay prohibits the debtor from paying, the third party may be relieved of liability for the debtor's nonpayment. Belcufine v. Aloe, 112 F.3d 633.37 C.B.C.2d (3rd Cir. 1997)(corporate managers did not pay Corporate debtor's obligation to employees. For which Pennsylvania law made managers liable for the event of corporate nonpayment).

09/29/2017 18:14 6267281915 RE COM PAGE 03/14

9/26/2017 Case 2:17-bk-20956-WB Doc 44-1 Filed 11/22/17 Entered 11/22/17 09:09:45 Desc
CM/ECF - U.S. Bankruptcy Court (LIVE)
Exhibit 1-6 Page 56 of 67

United States Bankruptcy Court
Central District of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under
Chapter 13 of the United States Bankruptcy Code, entered on 09/07/2017
at 10:45 AM and filed on 09/07/2017.



**Jose Roberto Benitez-Gomez**
655 S. Broadmoor Avenue
West Covina, CA 91790
949 517-6402
SSN / ITIN: xxx-xx-8882
*aka* **Jose R Gomez**
*aka* **Luciano L Gomez**

      The bankruptcy trustee is:

      **Sam S Leslie (TR)**
      3435 Wilshire Blvd., Suite 990
      Los Angeles, CA 90010
      213-368-5000

The case was assigned case number 2:17-bk-20956-WB to Judge Julia W. Brand.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at
all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights
in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our
*Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple Street,, Los Angeles, CA
90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

                                      **Kathleen J. Campbell**
                                      **Clerk, U.S. Bankruptcy Court**

Fill in this information to identify your case and this filing:

Debtor 1 **Jose Roberto Benitez-Gomez**
First Name    Middle Name    Last Name

Debtor 2
(Spouse, if filing) First Name    Middle Name    Last Name

United States Bankruptcy Court for the: **Central** District of **CA**
(State)

Case number: **2:17-bk-20956-WB**

FILED
OCT 03 2017
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

☒ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☒ Yes. Where is the property?

1.1. **9532 Arkansas Street**
Street address, if available, or other description

**Bellflower** **CA** **90706**
City   State   ZIP Code

**Los Angeles County**
County

**What is the property?** Check all that apply.
☒ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other_____

Who has an interest in the property? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another
Other information you wish to add about this item, such as local property identification number: **7110-019-015**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

**Current value of the entire property?** $ **170,000.00**
**Current value of the portion you own?** $ **5,100.00**

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**FEE SIMPLE 3% INTEREST**

☐ Check if this is community property (see instructions)

If you own or have more than one, list here:

1.2. **7371 Pinewood Court**
Street address, if available, or other description

**Corona** **CA** **92880**
City   State   ZIP Code

**Riverside County**
County

**What is the property?** Check all that apply.
☒ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other_____

Who has an interest in the property? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another
Other information you wish to add about this item, such as local property identification number: **144-160-023-7**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

**Current value of the entire property?** $ **550,000.00**
**Current value of the portion you own?** $ **11,000.00**

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**FEE SIMPLE 2% INTEREST**

☐ Check if this is community property (see instructions)

American LegalNet, Inc.
www.FormsWorkFlow.com

09/29/2017  18:14     6267281915                    RE COM                                    PAGE   05/14

Case 2:17-bk-20956-WB     Doc 44-1    Filed 11/22/17     Entered 11/22/17 09:09:45     Desc
                                Exhibit 1-6   Page 58 of 67
Case 2:17-bk-20956-WB     Doc 19    Filed 09/25/17     Entered 09/25/17 15:34:41     Desc Ch
                     7 First Mtg I/J No POC    Page 2 of 3

Debtor **Jose Roberto Benitez-Gomez**                                              Case number **2:17-bk-20956-WB**

| | | |
|---|---|---|
| 6. **Bankruptcy clerk's office**<br><br>Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 255 East Temple Street, Los Angeles, CA 90012 | Hours Open:  9:00 AM – 4:00 PM<br><br>Contact phone 855–460–9641<br><br>Dated: 9/25/17 |
| 7. **Meeting of creditors**<br><br>Debtors must attend the meeting to be questioned under oath by the trustee and by creditors. In a joint case, both spouses must attend. Creditors may attend, but are not required to do so. | **November 6, 2017 at 09:00 AM**<br><br>The meeting may be continued or adjourned to a later date. If so, the date will be on on the court docket.<br><br>The trustee is designated to preside at the meeting of creditors. The case is covered by the chapter 7 blanket bond on file with the court. | Location:<br><br>**915 Wilshire Blvd., 10th Floor, Meeting Room 2, Los Angeles, CA 90017** |
| 8. **Presumption of abuse**<br><br>If the presumption of abuse arises, you may have the right to file a motion to dismiss the case under 11 U.S.C. § 707(b). Debtors may rebut the presumption by showing special circumstances. | The presumption of abuse does not arise. | |
| 9. **Deadlines**<br><br>The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | **File by the deadline to object to discharge or to challenge whether certain debts are dischargeable:**<br><br>**You must file a complaint:**<br>• If you assert that the debtor is not entitled to receive a discharge of any debts under any of the subdivisions of 11 U.S.C. § 727(a)(2) through (7), or<br><br>• if you want to have a debt excepted from discharge under 11 U.S.C § 523(a)(2), (4), or (6).<br><br>**You must file a motion:**<br>• if you assert that the discharge should be denied under § 727(a)(8) or (9). | **Filing deadline: 1/5/18** |
| | **Deadline to object to exemptions:**<br>The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | **Filing deadline:** 30 days after the *conclusion* of the meeting of creditors |
| 10. **Proof of claim**<br><br>Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| 11. **Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |
| 12. **Exempt property** | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at www.pacer.gov. If you believe that the law does not authorize an exemption that the debtors claim, you may file an objection. The bankruptcy clerk's office must receive the objection by the deadline to object to exemptions in line 9. | |

**For more information, see pages 1 and 3 >**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>Jose Roberto Benitez-Gomez<br>655 S. Broadmoor Avenue<br>West Covina, CA 91790 | FOR COURT USE ONLY |
|---|---|
| | **COPY** |
| ☒ *Individual appearing without attorney*<br>☐ *Attorney for Debtor* | |

| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION** | |
|---|---|
| In re:<br>Jose Roberto Benitez-Gomez | CASE NO.:  2:17-bk-20956-WB<br>CHAPTER:  7 |
| Debtor(s) | **SUMMARY OF AMENDED SCHEDULES,<br>MASTER MAILING LIST,<br>AND/OR STATEMENTS<br>[LBR 1007-1(c)]** |

A filing fee is required to amend Schedules D or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov). A supplemental master mailing list (do not repeat any creditors on the original) is required as an attachment if creditors are being added to the Schedule D or E/F.
Are one or more creditors being added? ☒ Yes ☐ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☒ Schedule A/B    ☐ Schedule C        ☐ Schedule D        ☐ Schedule E/F       ☐ Schedule G

☐ Schedule H      ☐ Schedule I        ☐ Schedule J        ☐ Schedule J-2       ☐ Statement of Financial Affairs

☐ Statement About Your Social Security Numbers    ☐ Statement of Intention    ☒ Master Mailing List

☐ Other (specify) _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and or statements are true and correct.

Date: 10/03/2017 _____          _Jose Roberto Benitez Gomez_
                                        Debtor 1 Signature

                                        _____
                                        Debtor 2 (Joint Debtor) Signature (if applicable)

*NOTE:*  It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
349 Capman Avenue, Placenta, CA 92870

A true and correct copy of the foregoing document entitled (*specify*): **SUMMARY OF AMENDED SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS [LBR 1007-1(c)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) 09/29/2017_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

UNITED STATES TRUSTEE (LA) , 725 S FIGUEROA ST., 26TH FLOOR, LOS ANGELES, CA 90017

SAM S. LESLIE (TR) 3435 WILSHIRE BLVD., SUITE 990, LOS ANGELES, CA 90010

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | |
|---|---|
| 10/03/2017    Jose Garcia | _Jose Garcia_ |
| *Date*      *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

December 2015      Page 2      **F 1007-1.1.AMENDED.SUMMARY**

## MAILING LIST

BARRET DAFFIN FRAPPIER
TREDER & WEISS, LLP
4004 BELT LINE ROAD, SUITE 100
ADDISON, TEXAS 75001

AZTEC FORECLOSURE CORP.
3636 N. CENTRAL AVE. SUITE 400
PHOENIX, AZ 85012

T. D. SERVICES COMPANY
4000 W. METROPOLITAN DR. STE. 400
ORANGE, CA 92868

**COPY**

RECORDING REQUESTED BY:
JOSE LUIS JIMENEZ

**COPY** of Document Recorded

WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENTS TO:
Jose Roberto Benitez-Gomez
7371 Pinewood Court
Corona, CA 92880

Has not been compared with original.
Original will be returned when
processing has been completed.

APN: 144-160-023-7                        SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)            **"THIS CONVEYANCE IS TO SECURE A DEBT, R & T 11921."**
DOCUMENTARY TRANSFER TAX is $ 0    CITY TAX $ 0
__X__ computed on full value of property conveyed, or gift
_____ computed on full value less value of liens or encumbrances remaining at time of sale,
_____ unincorporated area:    __X__ City of CORONA, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged
I, JOSE LUIS JIMENEZ, a married man as his sole and separate property

## HEREBY GRANT(S) TO:

JOSE LUIS JIMENEZ, a married man as his sole and separate property as to an undivided Ninety-Five Percent
(95%) interest, RAMONA O. TREJO, a single woman as to an undivided Three Percent (3%) interest and
JOSE ROBERTO BENITEZ-GOMEZ, a single man as to an undivided Two Percent (2%) interest, all as joint
tenants of the following described real property in the County of Riverside, State of California.

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A"**

Also known as: 7371 Pinewood Court, Corona, CA 92880

Jose Luis Jimenez      by _____ as his Attorney In Fact, 5-16-17
JOSE LUIS JIMENEZ            ALICIA HERNANDEZ  as  his  Attorney In Fact DATE

A notary public or other officer completing this certificate verifies only the
identity of the individual who signed the document to which this certificate
is attached, and not the truthfulness, accuracy, or validity of that document

STATE OF CALIFORNIA      }
COUNTY OF Los Angeles    } S.S.
On  May 16, 2017,
Before me,  Ricardo Hernandez _____, a Notary Public, personally appeared
ALICIA HERNANDEZ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal:

Signature _____
           Notary Public

RICARDO HERNANDEZ
Commission No. 2184080
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires FEBRUARY 20, 2021

# EXHIBIT "A"

LOT 23, OF TRACT NO. 28387-1, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 286, PAGE(S) 82 THROUGH 86, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A
DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

**RECORDING REQUESTED BY:**
JOSE LUIS JIMENEZ


AND WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENT TO:

NAME          Alicia Hernandez
MAILING       7371 Pinewood Court
CITY, STATE,  Corona, CA
ZIP CODE      92880

APN: 144-160-023-7                                SPACE ABOVE THIS LINE FOR RECORDER'S USE

## POWER OF ATTORNEY IN FACT – SPECIAL

### KNOW ALL MEN BY THESE PRESENTS

That _____JOSE LUIS JIMENEZ_____ has/have made, constituted and appointed, and by these presents do/does hereby make, constitute and appoint ____ALICIA HERNANDEZ____ his/her/their true and lawful Attorney(s) for his/her/their and in his/her/their name(s), place(s) and stead to ask, demand, sue for, recover, collect and receive all such sums of money, debts, dues, accounts, legacies, bequests, interests, dividends, annuities, and demands whatsoever as are now or shall hereafter become due, owing, payable, or belonging to the undersigned; and have, use, and take all lawful ways and means in the name of the undersigned, or otherwise, for the recovery thereof, by legal process, and to compromise and agree for the same, and grant acquaintances or other sufficient discharges for the same, for the undersigned, and in the name of the undersigned to make, seal, and deliver the same; to compromise any and all debts owing by the undersigned, and to convey, transfer, and/or assign any property of any kind or character belonging to the undersigned in satisfaction of any debt owing by us or either of us; to bargain, contract, agree for, purchase, receive, and take lands, tenements, hereditaments, and accept the seize and possession of all lands, and all deeds, and other assurances in the law therefore; and to lease, let, demise, bargain, sell, remise, release, convey, mortgage, convey in trust, and hypothecated lands, tenements, and hereditaments, upon such terms and conditions, and under such covenants as said attorney shall think fit; to exchange real or personal property for other real or personal property, and to execute and deliver the necessary instruments of transfer or conveyance to consummate such exchange; to execute and deliver subordination agreements subordinating any lien, encumbrance or other right in real property or personal property to any other lien, encumbrance, or other right therein; also to bargain and agree for, buy, sell mortgage, hypothecate, convey in trust or otherwise, and in any and every way and manner deal in and with goods, wares and merchandise, choses in action, and other property in possession or in action, including authority to utilize my eligibility for VA Guaranty; also transfer all and every kind of business of what nature and kind whatsoever; and, also, for the undersigned and in the name(s) and as the act and deed of the undersigned, to signed, seal, execute, deliver, and acknowledge such deeds, covenants, leases, indentures, agreements, mortgages, deeds of trust, hypothecations, assignments, bottomries, charger parties, bills of lading, bills, bonds, notes, receipts, evidences of debts, releases, and satisfactions of mortgage, judgment and other debts, and such other instruments in writing, of whatever kind of nature, as may be reasonable, advisable, necessary, or proper in the premises. EACH AND ALL OF THE POWERS HEREIN GRANTED SHALL BE EXERCISED BY SAID ATTORNEY AS TO THE FOLLOWING DESCRIBED PROPERTY ONLY:

Commonly known as:   7371 Pinewood Court, Corona, CA 92880

### SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A"

Giving and granting unto said Attorney(s) in Fact full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as the undersigned might or could do if personally present, the undersigned hereby expressly ratifying and confirming all that said Attorney shall lawfully do or cause to be done by virtue of these presents.

JOSE LUIS JIMENEZ                              9/19/16.
_____      _____
JOSE LUIS JIMENEZ                              DATE

STATE OF CALIFORNIA    } S.S.
COUNTY OF ~~LOS ANGELES~~ } ᴄᴄ   Riverside
On   9-19- 2016
Before me,   _____, a Notary Public, personally appeared
**JOSE LUIS JIMENEZ** who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the forgoing paragraph is true and correct**

WITNESS my hand and official seal.

Signature_____   See Certificate
                  Notary Public        Attached.

A notary public or other officer completing this certificate verifies only the
identity of the individual who signed the document to which this certificate
is attached, and not the truthfulness, accuracy, or validity of that document

STATE OF CALIFORNIA    ~~C~~ }
COUNTY OF ~~LOS ANGELES~~    } S.S. Riverside
On _____ 9- 19- 2016 _____

Before me, _____ Claudia Quinn _____ , a Notary Public, personally appeared

JOSE LUIS JIMENEZ

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal:

Signature _____
                    Notary Public

CLAUDIA QUINN
Commission # 2101370
Notary Public - California
Riverside County
My Comm. Expires Mar 25, 2019

(SEAL)

Documents provided by Data Trace Proprietary business to DataTrace. Copyright 2003. All rights reserved.

**WHEN RECORDED MAIL TO:**
Title365
Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

**DOC # 2017-0375398**
09/11/2017 10:51 AM Fees: $28.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: ALYCIA #778



Space above this line for recorder's use only

Trustee Sale No. 17-004848 CXE
730-1701723-70
APN 144-160-023-7

## NOTICE OF TRUSTEE'S SALE

*ATTENTION RECORDER:* THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY – PURSUANT TO CIVIL CODE SECTION 2923.3(a)

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 07/18/06. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **10/04/17** at **9:00 am, Aztec Foreclosure Corporation** as the duly appointed Trustee under and pursuant to the power of sale contained in that certain Deed of Trust executed by **Jose Luis Jimenez, a married man as his sole and separate property,** as Trustor(s), in favor of Mortgage Electronic Registration Systems, Inc., solely as Nominee for RESMAE Mortgage Corporation, a Delaware Corporation, as Beneficiary, **Recorded on 07/27/06 in Instrument No. 2006-0548009** of official records in the Office of the county recorder of RIVERSIDE County, California; WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state), **In front of the Corona Civic Center, 849 W. Sixth Street, Corona, CA 92882,** all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California described as:

**7371 PINEWOOD COURT, CORONA, CA 92880**

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$594,626.87** (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

Documents provided by DataExplorers® proprietary ImageImaged™ foreclosure. Copyright 2003, All rights reserved.
Exhibit Page 67 of 67

DOC #2017-0375398  Page 2 of 2

Notice of Trustee's Sale
T.S. #:  17-004848 CXE
ORDER #:    730-1701723-70

The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

DATE: _____ 9/7/17 _____

AZTEC FORECLOSURE CORPORATION

Amy Connolly
Assistant Secretary / Assistant Vice President
Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012
Phone: (877) 257-0717 or (602) 638-5700
Fax:  (602) 638-5748
www.aztectrustee.com



**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call or visit the Internet Web site, using the file number assigned to this case 17-004848. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

| www.homesearch.com<br>800-758-8052 | Or | Aztec Foreclosure Corporation<br>(877) 257-0717<br>www.aztectrustee.com |
|---|---|---|